IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEYSTONE OUTDOOR ADVERTISING  :
COMPANY, INC., and                          :
KEYSTONE PORT, INC., and              :        CIVIL ACTION
DELAWARE RIVER PORT AUTHORITY :
                                                          :        NO. 19-5951
                    v.                                 :
                                                          :
SECRETARY OF THE PENNSYLVANIA :
DEPARTMENT OF TRANSPORTATION  :

**<u>MEMORANDUM</u>**

**SURRICK, J.**                                                          **JULY 18, 2022**

Presently before the Court are three motions for partial summary judgment, all of which

turn on one key question: whether PennDOT has the authority to unilaterally regulate billboards

on Delaware River Port Authority (DRPA) property located there pursuant to a license

agreement with a third party vendor, Keystone Outdoor Advertising Company.  We previously

addressed this question in an order denying judgment on the pleadings and deferred judgment

until discovery had taken place.  (*See* Order on Motion for Judgment on the Pleadings, ECF No.

31.)  At this time, discovery has been completed and there are no longer genuine issues of fact

that preclude judgment in this matter.  Keystone, the DRPA, and PennDOT each ask that we

declare their rights under the compact relating to the Billboards located on DRPA property along

the Walt Wittman Bridge.  Keystone also requests injunctive relief related to this issue.

We interpret the compact to unambiguously grant the bi-state entity, the DRPA, the

authority to contract with third parties, such as Keystone, to generate revenue for its continued

operations.  There is no expressly reserved power in the compact that allows PennDOT to retain

control over outdoor advertising on DRPA property.  Therefore, we conclude that PennDOT may not unilaterally interfere with or prohibit the operation and/or maintenance of billboards owned or managed by the DRPA and its third party licensees on DRPA-owned property within Pennsylvania.  We also hold that Keystone is not a third party beneficiary under the compact and cannot obtain any relief thereunder.

## I.    INTRODUCTION

The DRPA is a bi-state entity created by an interstate compact between New Jersey and Pennsylvania.  (Keystone Compl., Exh 1: Compact Art. I, ECF No. 1.)  The DRPA is charged with carrying out essential government functions involving the Delaware River, which serves as a natural boundary between the two states.  (*Id.*)  Both New Jersey and Pennsylvania have codified the Compact into law.  36 P.S. § 3503 *et seq.*; N.J.S.A. 32:3-1 *et seq.*  Pursuant to the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, Congress has approved the Compact.  47 Stat. 308.

### A.    Relevant Compact Provisions

In Article I, the Compact lists various "public purposes" of the DRPA.  Among these public purposes are the:

> planning, financing, development, acquisition, construction, purchase, lease, maintenance, marketing, improvement and operation of any project, including but not limited to any terminal, terminal facility, transportation facility, or any other facility of commerce or economic development activity . . . .

(Compact Art. I(n).)  Article VIII of the Compact authorizes the DRPA to:

> establish, levy, and collect (or to authorize by contract, franchise, lease or otherwise, the establishment, levying and collection of) such tolls, rents, rates, and other charges in connection with . . . properties it may hereafter construct, erect, acquire, own, operate or control, as it may deem necessary, proper, desirable and reasonable . . . .

2

(Compact Art. VIII.)  Furthermore, to effectuate its authorized purposes, the DRPA is

empowered by the Compact:

> (f) To enter into contracts.
> …
>
> (h) To acquire, own, use, lease, operate, mortgage, and dispose of real property and interests in real property, and to make improvements thereon.
> …
>
> (l) To determine the exact location, system and character of, and all other matters in connection with, any and all improvements or facilities which it may be authorized to own, construct, establish, effectuate, operate, or control.
> …
>
> (n) To exercise all powers not inconsistent with the constitutions of the two States of the United States, which may be reasonably necessary or incidental to the effectuation of its authorized purposes or to the exercise of any of the foregoing powers, except the power to levy taxes or assessments, and generally to exercise in connection with its property and affairs, and in connection with property within its control any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs.

(Compact Art. IV.)  Pennsylvania and New Jersey have also agreed under the Compact that for

any properties or facilities owned, operated, or controlled by the DRPA, the two states:

> will not diminish or impair the power of the [DRPA] to own, operate or control said properties and facilities or to establish, levy and collect tolls, rents, rates and other charges in connection with such properties or facilities.

(Compact Art. IX.)

### B.    Keystone's Billboards on DRPA Property

Since 1999, Keystone has contracted with the DRPA through a License Agreement to

construct and operate two double-sided billboards on DRPA property, adjacent to the Walt

Whitman Bridge.  (Pl.'s Mot. Summary Judgment, Exh. 1: License Agreement; Pl.'s Mot.

Summary Judgment, Exh. 2: License Renewal Agreement.)  The License Agreement between Keystone and the DRPA for the Billboards was approved by the DRPA Finance Committees and the DRPA Board of Commissioners, whose members are appointed by public officials in both Pennsylvania and New Jersey.  (Pl.'s Mot. Summary Judgment, Exh. 5: Keystone Resp. to PennDOT Interrog., at 3.)  The DRPA, through the License Agreement, maintains control over the advertising content displayed on the billboards, as well as the DRPA property on which the Billboards are located.  (*See* Exh. 1; Exh. 2.)  The Billboards are owned by Keystone, though the License Agreement provides that Keystone will surrender the Billboards to the DRPA when the License Agreement expires.  (*Id*.)

In addition, the Billboards have generated revenue for the DRPA since their construction in 1999.  (DRPA Mot. Summary Judgment, Exh. D: DRPA Answer to Def. Interrogatories, ECF No. 46-2, at 7-8.)  Specifically, the License Agreements require that Keystone pay the DRPA either (1) a minimum annual payment in monthly installments, or (2) a percentage of monthly revenue generated by the advertisements on the billboards, whichever is greater.  (*Id*. at 3.)  The purpose of the Billboards is to use an existing DRPA asset (i.e., DRPA-owned property) to generate revenue to support DRPA operations.  (*Id*. at 7-8.)

### C.      PennDOT's Attempted Regulation of the Billboards

From 1974 until 2015, PennDOT delegated any authority to enforce state billboard regulations to the City of Philadelphia.  However, in 2015, PennDOT withdrew that delegation and retroactively reviewed the City's past decisions of applications for advertising within the City of Philadelphia.  This review included the Keystone-owned Billboards at issue in this case, located adjacent to the Walt Whitman bridge on DRPA property.  PennDOT attempted to deny

Keystone's permit applications for the Billboards, asserting that the Billboards violate the Pennsylvania Outdoor Advertising Control Act of 1971. *See* 36 P.S. §§ 2718.101 et seq. Specifically, PennDOT asserts that Keystone was servicing the Billboards "by accessing its location through limited access right-of-way," which violates 67 Pa. Code sections 445.9(b) and 445.9(e). Accordingly, PennDOT has threatened to fine Keystone or remove the Billboards.

### D.      Procedural History

Keystone subsequently filed the instant action against PennDOT, requesting declaratory and injunctive relief. The DRPA then filed a motion to intervene, which was not opposed, and was granted by the Court. (DRPA Mot. Intervene, ECF No. 5; Order Granting Mot. Intervene, ECF No. 9.) The DRPA then filed its Complaint in Intervention, also asserting claims for declaratory judgment and injunctive relief under the Compact. PennDOT filed an Answer to the DRPA's Complaint, which included Counterclaims for declaratory and injunctive relief against the DRPA. All three parties to this case have requested, in their pleadings, that the Court render declaratory judgment as to whether PennDOT can enforce Pennsylvania and/or federal laws or regulations to preclude continued operation of the Billboards on DRPA property. The Parties also requested that the Court rule on this issue in motions for judgment on the pleadings, filed in May of 2020. The Court denied those motions, holding that the issue was not ripe for judgment as there were genuine issues of fact that needed to be fleshed out by extensive discovery. Discovery is now complete, and all three parties move for partial summary judgment on this same issue.

## II.      LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  The presence of "a scintilla of evidence in support of the [non-moving party] will be insufficient" to carry the case to trial.  *Id*. at 252.  Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact is genuinely . . . disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).  When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.  Courts must not resolve factual disputes or make credibility

determinations. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

When a court is faced with cross-motions for summary judgment, "[t]he rule is no different." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id*. (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

## III.   DISCUSSION

In the pending motions, the parties request that we declare the parties' respective rights under the compact regarding the operation and maintenance of the Billboards on DRPA property. The parties primarily dispute two issues: (1) whether Keystone and/or the DRPA have standing to bring this action for violation of the Compact, and (2) whether PennDOT has the authority to regulate the Billboards under the Compact. Each of these arguments will be addressed in turn.

### A.   Standing

PennDOT asserts that neither Keystone nor the DRPA have standing to bring a claim under the Compact. We agree that Keystone has no standing to enforce the Compact and therefore grant summary judgment in favor of PennDOT, and against Keystone, holding that Keystone is not a third party beneficiary to the compact and therefore does not have enforcement rights. However, we disagree with regard to the DRPA and hold that it does have standing to enforce the Compact.

      *1.*    *Keystone Outdoors*

      PennDOT asserts that Keystone does not have standing to enforce the Compact as a third party beneficiary.  In order to enforce the Compact as a third party beneficiary, Keystone is required to meet the elements of third party standing under the Restatement (Second) of Contracts Section 302[1], as laid out in *Doe v. Pennsylvania Board of Probation and Parole*, 513 F.3d 95, 106 (3d Cir. 2008).  A third party can claim rights under a compact, even if not stated expressly, if it is consistent with the intention of the parties to the compact.  Only intended beneficiaries may enforce the contract, not incidental beneficiaries.  Restatement (Second) of Contracts § Scope (1979).  The Restatement defines intended third party beneficiaries as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979); *Doe*, 513 F.3d at 106.  Thus, an individual holds third party beneficiary status (1) if the "parties indicate in the agreement itself that the third party is a beneficiary," or (2) "if circumstances compel us to recognize such a status in order to effectuate the intention of the parties." *Doe*, 513 F.3d at 106.

      The first inquiry offers no relief here; the Compact does not specifically state that Keystone, or any outdoor advertising company, is a beneficiary.  The second inquiry also fails; the circumstances of the Compact do not indicate that Keystone, as an outdoor

---

[1] Interstate compacts are construed as contracts and analyzed under the principles of contract law.  *Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 628 (2013).

advertising company, was intended to reap the benefit of the promised performance of the Compact.  Keystone argues that the Compact grants it third party beneficiary status by acknowledging that the DRPA may contract with third parties.  This argument has been explicitly rejected by the Third Circuit.  *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 60-61 (3d Cir. 2018) (a party owed performance only by virtue of its own separate contract is merely an incidental beneficiary, not an intended beneficiary); Restatement (Second) of Contracts § 302, comment e ("Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created.").

In *Doe v. Pennsylvania Board of Probation and Parole*, the plaintiffs argued that they, parolees, were third party beneficiaries to the Interstate Compact Concerning Parole because the Compact stated that its purpose included "the rehabilitation" of the offender.  *Doe*, 513 F.3d at 118 n.8.  However, the Third Circuit rejected this argument and held that, when looking to the intent of the parties, there was no implied intent to give parolees legally enforceable rights, even when the entire Compact was dedicated to the issue of parole.  The court explained that the intent of the Compact was rather to promote "cooperation between states, protection of the rights of victims, regulation and control of offenders across state borders and the tracking, supervision and rehabilitation of these offenders."  *Id*. at 107.  Accordingly, the Third Circuit found that there was no third party obligation in the Compact to parolees and no evidence that "Pennsylvania and New Jersey implicitly intended to give legally enforceable rights to Doe."  *Id*.

The same is true here.  The purpose of this Compact is primarily to create the DRPA, a bi-state entity, to supervise and manage the operation and maintenance of the bridges and tunnels across or under the Delaware River, the improvement and development of the Port District, the promotion of the Delaware River as a highway of commerce, and other issues related to the travel over, under, or in the Delaware River. *See* Compact, Article I.  Nothing in the Compact suggests that Pennsylvania and New Jersey implicitly intended to give Keystone, a third party vendor, legally enforceable rights under the Compact.  Therefore, Keystone is not a third party beneficiary and does not have standing to enforce the Compact.

For these reasons, we grant summary judgment in favor of PennDOT, and against Keystone, holding that Keystone is not a third party beneficiary to the compact and therefore does not have enforcement rights.  Because Keystone has no standing to enforce the compact, they cannot obtain injunctive or declaratory relief on this basis.[2]

> 2.    *DRPA*

PennDOT also asserts that the DRPA has no standing to enforce the Compact.  We disagree.  The DRPA has standing to enforce the Compact as a third party beneficiary to the Compact, as admitted by PennDOT in its briefing.  In PennDOT's own words, "[a]lthough the DRPA is not a party to the Compact, there is no doubt that the contracting parties (Pennsylvania and New Jersey) intended to create the DRPA and give it certain powers, thus providing [the]

---

[2] We acknowledge that Keystone still has claims pending in this matter not subject of these motions: Count IV (Substantive Due Process) and Count V (Procedural Due Process). PennDOT admits that Keystone has standing to bring its due process claims in Counts IV and V and should be permitted to pursue its request for declaratory and injunctive relief on these claims.  (*See* Def.'s Reply in Supp. of Summary Judgment, ECF No. 49, at fn.3.)

DRPA the benefit of each state's performance under the compact and third party beneficiary status." (Def. Reply in Supp. Mot. Summary Judgment, ECF No. 49, at 4.) *See also* Restatement (Second) of Contracts § 302 (1979); *Doe*, 513 F.3d at 106. However, PennDOT then argues that the DRPA nevertheless lacks standing because it cannot assert a redressable injury related to a violation of the Compact. This is not so.

In order for a plaintiff to have standing, the Constitution of the United States requires that the plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339. It is clear that the DRPA has suffered "an invasion of a legally protected interest" that is "concrete and particularized." We conclude, as explained more fully below, that the DRPA is authorized through the Compact to contract with third party vendors, such as Keystone, to use its land for revenue generation through collecting rents and undertaking economic development projects. Therefore, PennDOT's attempt to regulate the Billboards on DRPA property, located there pursuant to a contract between the DRPA and Keystone and in accordance with the DRPA's authorized purposes, directly impinges on the DRPA's legal rights under the Compact.[3]

---

[3] Other bi-state entities created by compact have been successful in bringing claims against the compacting states who attempt to enforce state or federal regulations on their property in the Third Circuit. *See, e.g.*, *DRJTBC*, 985 F.3d at 196 (affirming judgment in favor of the DRJTBC where the DRJTBC brought suit against Pennsylvania for attempting to regulate the DRJTBC's elevator operations at a project conducted by the DRJTBC on DRJTBC property). This is further proof that standing exists for such entities in these cases.

Moreover, the Third Circuit has held that a plaintiff seeking declaratory relief has Article III standing if "there is such substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Constitution Party v. Aichele*, 757 F.3d 347, 372 (3d Cir. 2014) (citing *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 193 (3d Cir. 2004)).  Here, there is a substantial controversy between PennDOT and the DRPA, both of whom are asking this Court to declare judgment as to the parties' respective rights as to enforcement of Pennsylvania's laws to the Billboards located on DRPA property.   Clearly, under this test, the DRPA has standing and there is a "case or controversy" that is ripe for adjudication.

### B.   PennDOT Surrendered All Authority Over Outdoor Advertising on DRPA Property Through the Compact

After extensive discovery that resolved all genuine issues of material fact in this matter, Keystone, the DRPA, and PennDOT have all moved for a declaratory judgment, asking the Court to resolve the issue of whether PennDOT may unilaterally impose Pennsylvania's outdoor advertising laws on the Billboards, owned by Keystone, located on DRPA property pursuant to a License agreement.

Bi-state entities, such as the DRPA, are created by compact, approved by Congress pursuant to the Compact Clause, and, thus, are not subject to unilateral control of either state to the compact.  *hip (Heightened Indep. & Progress), Inc. v. Port Auth.*, 693 F.3d 345, 356 (3d Cir. 2012).  When a bi-state entity is created, each state surrenders a portion of their sovereignty to the entity.  *Id*.  Therefore, determining whether a state can unilaterally regulate the bi-state entity on a particular issue (e.g., outdoor advertising) is "a question of the rights and powers [the states] surrender[ed] to the [entity] in their negotiated Compact."  *Del. River Joint Toll Bridge Comm'n*

12

*v. Oleksiak*, No. 19-2978, 2020 U.S. Dist. LEXIS 52312, at \*9 (E.D. Pa. Mar. 26, 2020).

Keystone and the DRPA argue that the Compact ceded all authority of PennDOT to enforce its own regulations on DRPA property when the DRPA is acting within its authorized purposes, unless expressly reserved.  PennDOT primarily argues that it can regulate DRPA property where the DRPA is not acting within its authorized purposes, and that hosting the privately-owned billboards exceeds those purposes.

To determine whether the DRPA is acting within its authorized purposes, we must first look to the text of the Compact.  As the basics of contract interpretation require, "the analysis begins with the express terms of the Compact as the best indication of the intent of the parties." *Id*. at \*32.  The Compact at issue here grants the DRPA vast enumerated powers "for the effectuation of its authorized purposes."  (Compact, Art. IV.)  Therefore, to determine whether PennDOT surrendered its power to enforce outdoor advertising laws on DRPA property, we must first determine whether the DRPA is acting within its authorized purposes.  If so, then we must look to the powers granted to the DRPA to determine whether the Compact expressly reserved any power over outdoor advertising to the states.

We find that the DRPA is acting within its powers in contracting with Keystone to host billboards on its property, which generate revenue for the DRPA.  We further find that the states to the Compact did not expressly reserve the power to regulate outdoor advertising on DRPA property and, thus, do not have the power to do so.

### 1.    *Authorized Purpose of the DRPA*

There are multiple articles within the Compact that authorize the DRPA to act.  The most notable is Article I, which provides a list of "public purposes" of the DRPA.  In other articles of

13

the Compact, the DRPA is authorized to take additional actions, not listed in Article I.  One such provision is Article VIII, which states that "the Commission is hereby authorized to make and enforce such rules and regulations and to establish, levy, and collect (or to authorize by contract, franchise, lease or otherwise, the establishment, levying and collection of) such tolls, rents, rates, and other charges in connection with . . . any other properties which it may hereafter construct, erect, acquire, own, operate or control, as it may deem necessary, proper, desirable and reasonable." (Compact Art. VIII.)  Keystone and the DRPA assert that this provision authorizes the DRPA to contract with third parties solely for the sake of revenue generation (i.e., contracting with Keystone to erect the Billboards on DRPA property and charging Keystone rent in exchange for such use).  In opposition, PennDOT argues that this provision (1) does not operate independently from the DRPA's public purposes as listed in Article I, and (2) that it is Keystone, not the DRPA, who owns the Billboards and is therefore a private party that it is regulating, rather than the DRPA.  We disagree and hold that the DRPA is acting within its authorized purposes as proscribed in Articles VIII and I(n).

First, given the plain language of the Compact, it is clear that Article VIII operates independently of Article I; there is nothing in the language of Article I or Article VIII that suggests that the DRPA can collect tolls, rents, and rates only in connection with the "public purposes" listed in Article I.  Article VIII does not reference Article I, or any of the public purposes given in Article I.  Further, Article I does not have limiting language that indicates that the "public purposes" listed therein are the *only* authorized purposes which the DRPA can undertake.  Article VIII states that the DRPA "is hereby authorized" to collect tolls, rents, and rates in connection with its own property.  Accordingly, this can also be considered an

"authorized purpose" for which the DRPA can use its powers, in addition to the "public purposes" listed in Article I.

The only relevant limitation in the language of Article VIII is that the tolls, rents, and rates that the DRPA is authorized to collect must be "in connection with" the bridge across the Delaware River and "any other properties which it may hereafter construct, erect, acquire, own, operate or control." While PennDOT argues that the Billboards at issue cannot fall into this category because they are owned by Keystone rather than the DRPA, this argument offers a tortured reading of the text. The property on which the Billboards are constructed belongs to the DRPA. The Billboards are located there pursuant to a contract between the DRPA and Keystone. The DRPA charges Keystone rent for the use of its property. As authorized by Article VIII, the DRPA is collecting "rents . . . in connection with . . . any other property which it . . . own[s]." It is of no importance that the Billboards themselves are owned by Keystone. Keystone is paying rent to the DRPA for the use of its property. Stated another way, the DRPA is using property it owns and controls to generate revenue by renting it out to Keystone. This is clearly within the scope of what Article VIII of the Compact authorizes. Therefore, the DRPA is acting within its authorized purposes.

In addition, Article I(n) also authorizes the DRPA to contract with Keystone for the Billboards. Article I(n) states that one of the DRPA's public purposes is "[t]he planning, financing, development, acquisition, construction, purchase, lease, maintenance, marketing, improvement and operation of any project, including but not limited to any terminal, terminal facility, transportation facility, or any other facility of commerce or economic development activity; from funds available after appropriate allocation for maintenance of the bridge and other

15

capital facilities."  PennDOT argues that this provision does not allow the DRPA to contract with third parties solely for the sake of revenue generation because the final segment of this provision requires the DRPA to *spend* DRPA funds, rather than *generate* them.[4]  We disagree.  It is not logical to interpret the phrase "from funds available after appropriate allocation for maintenance of the bridge and other capital facilities" to mean that the DRPA is only allowed to spend money, not generate money, for any of the projects listed therein.  Rather, a more straightforward interpretation is: if the DRPA wants to partake in a certain project, it must first allocate its funds to maintenance of the bridge and other facilities.  This provision has the effect essentially of ensuring that the DRPA does not take on extraneous projects to the detriment of its core purpose, maintaining the bridge and facilities.  However, we do not take this to mean that the DRPA can *only* spend money on projects.

For these reasons, in considering both Article VIII and Article I(n), it is clear from the plain language of the Compact that the DRPA is acting within the scope of its authorized purposes here.

---

[4] PennDOT also argues that the doctrine of *ejusdem generis* makes it so the phrase "any other facility of commerce or economic development activity" must be read in the context of the preceding list ("any terminal, terminal facility, transportation facility").  If read in this way, PennDOT asserts the result is that any "economic development activity" must relate to the facilitation of travel or commerce on or over the Delaware River and, therefore, does not include the construction of and contracting for the Billboards.  This argument, however, ignores one key phrase in this provision of the Compact: "*including, but not limited to* any terminal, terminal facility, transportation facility, or any other facility of commerce or economic development activity."  The Third Circuit has explicitly held that the *ejusdem generis* doctrine does not apply when the phrase "including, but not limited to" is present, because it expresses a contrary intent. *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 280 (3d Cir. 1995).  Therefore, this argument by PennDOT as to this provision clearly fails.

2.      *Authority Not Expressly Reserved by PennDOT*

Having determined that the DRPA is acting within its authorized purposes in contracting with Keystone to host the Billboards on its land in exchange for rents paid by Keystone, we must now look to the text to the Compact to confirm that it does not expressly reserve authority to the states in the area of outdoor advertising.  When a bi-state entity is created pursuant to the Compact Clause, there is presumed to be an unambiguous surrender of state sovereignty to that entity.  *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. De't of Labor & Indus.*, 985 F.3d 189, 195 (3d Cir. 2021) (citing *hip*, 693 F.3d at 358).  By creating a bi-state entity, the states relinquish all control over the entity unless expressly reserved in the compact.  *Id*.  All parties agree, as do we, that the Third Circuit's decision in *DRJTBC* stands for the proposition that when a bi-state entity created by Compact acts in accordance with its authorized purposes, the scope of the surrender of authority should be construed broadly and includes the general surrender of police powers, unless expressly reserved.  *Id.* at 196.

Article IV of the Compact grants the DRPA a wide variety of powers that it can use "[f]or the effectuation of its authorized purposes."  (Compact Art. IV.)  Specifically, the DRPA is granted the power "[t]o acquire, own, use, lease, operate, mortgage, and dispose of real property and interests in real property, and to make improvements, thereon" and "[t]o determine the exact location, system and character of, and all other matters in connection with, any and all improvements or facilities which it may be authorized to own, construct, establish, effectuate, operate or control."  (Compact Art. IV(h); Compact Art. IV(l).)  The Compact also gives the DRPA the power "[t]o enter into contracts."  (Compact Art. IV(f).)  Finally, and most importantly, the DRPA was granted the ability "[t]o exercise *all powers* not inconsistent with the

constitutions of the two States of the United States, which may be reasonably necessary or incidental to the effectuation of its authorized purposes or to the exercise of any of the foregoing powers, except the power to levy taxes or assessments, and generally to exercise in connection with its property and affairs, and in connection with property within its control *any and all powers* which might be exercised by a natural person or a private corporation in connection with similar property and affairs."  (Compact Art. IV(n).)

Notably, the above-quoted language from the compact at issue here is the exact same language as the compact at issue in the *DRJTBC* case.  In that matter, the Third Circuit held that the states "ceded sovereign authority to the Commission when they authorized it, in the broadest terms '[t]o exercise *all other powers* . . . which may be reasonably necessary or incidental to the effectuation of its authorized purposes . . . *except the power to levy taxes.*'"  *DRJTBC*, 985 F.3d at 196.  Specifically, the court explained that "the ordinary meaning of 'all other powers' does not provide a limitation retaining the Commonwealth's police power," and that because the states expressly reserved their taxing power—but no other powers—that they "did not intend to retain authority to enforce building safety regulations."  *Id.*  The same is true here, as the exact same language is present in this compact: because the states granted to the DRPA "all other powers" which are necessary to effectuate its authorized purposes and did not expressly reserve the power over outdoor advertising—as it did over taxation—the language of the Compact determines that the states did not intend to retain such an authority.

For these reasons, we hold that Pennsylvania ceded its sovereign authority to enforce its outdoor advertising regulations as to billboards owned or managed by the DRPA and its third party licensees on DRPA-owned property within Pennsylvania.

18

**IV.      CONCLUSION**

For the foregoing reasons, we grant summary judgment to the DRPA to declare its rights under the compact and to be free from PennDOT's interference as to the operation and/or maintenance of billboards owned or managed by the DRPA and its third party licensees on DRPA-owned property within Pennsylvania.  We also grant summary judgment in favor of PennDOT, and against Keystone, holding that Keystone is not a third party beneficiary under the compact and therefore does not have enforcement rights.


*/s/ R. Barclay Surrick*_____
**R. BARCLAY SURRICK, J.**